## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CRIMINAL ACTION NO. 3:25-CR-00182-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM AND ORDER** |
| SHADY ABEDELHADY HEGAZY, | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Defendant Shady Hegazy's Motion to Suppress (Doc. No. 20). The Court has carefully considered this motion, the parties' briefs and exhibits, hearing testimony and oral argument on the motion from the parties' counsel on July 2, 2026. For the reasons discussed at the hearing and below, the Court will **DENY** the motion.

## I.      LEGAL STANDARD

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, rather than "proscrib[ing] all contact between the police and citizens," *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984), the Fourth Amendment "prevent[s] arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *Id.* (quoting *United States v. Martinez-Fuente*, 428 U.S. 543, 554 (1976)). The ultimate touchstone of the Court's analysis is whether a search is "reasonable under the circumstances." *United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016) (citing *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979)).

1

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment and [therefore] must be reasonable under the circumstances." *Id.* (citing *Prouse*, 440 U.S. at 653–54). The seizure begins when the vehicle is stopped by police and ends when the police "have no further need to control the scene, and inform the driver and passengers they are free to leave." *United States v. Green*, 740 F.3d 275, 279 (4th Cir. 2014) (quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)).

To review the constitutionality of a traffic stop, courts use the two-prong standard from *Terry v. Ohio*, 392 U.S. 1 (1968). First, the Court must determine whether it was lawful for police to "detain [the] automobile and its occupants pending inquiry into a vehicular violation." *Palmer*, 820 F.3d at 649 (quoting *Johnson*, 555 U.S. at 327). Second, the Court assesses whether the stop is "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Id.* (quoting *United States v. Guijon-Ortiz*, 660 F.3d 757, 764 (4th Cir. 2011)). Importantly, an officer may not "investigate 'a matter outside the scope of the initial stop' unless he receives the motorist's consent or develops reasonable, articulable suspicion of ongoing criminal activity." *Id.* at 649–50 (quoting *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011)).

Reasonable suspicion, "a less demanding standard than probable cause," requires officers to have "at least a minimal level of objective justification for making the stop." *United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). In short, it must be "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Burton*, 228 F.3d 524, 527 (4th Cir. 2000) (quoting *Terry*, 392 U.S. at 27) (internal quotations omitted). Reasonable suspicion only gives the officer authority to extend a traffic stop; more is required to search the stopped vehicle. An officer may only search the vehicle if "he obtains consent, secures a warrant, or develops probable cause to believe the vehicle contains

2

evidence of criminal activity." *Palmer*, 820 F.3d at 650 (citing *United States v. Baker*, 71 F.3d 313, 319 (4th Cir. 2013)).

Probable cause exists "when 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Davis*, 997 F.3d 191, 201 (4th Cir. 2021) (quoting *United States v. Patiutka*, 804 F.3d 684, 690 (4th Cir. 2015)). The "principal components" of a court's review and determination of whether probable cause existed "will be the events which occurred leading up to the stop or search" and "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to … probable cause." *Id.* (quoting *United States v. Brookins*, 345 F.3d 231, 235–36 (4th Cir. 2003)).

## II.     FACTS AND PROCEDURAL HISTORY

Following a series of violent incidents and drug activity, including a shootout in which a school bus was struck by bullets, the Charlotte Mecklenburg Police Department ("CMPD") installed a rotating pole camera facing a mini-mart located in a small strip mall.[1] Hr'g Tr. ("Tr.") 6. On March 6, 2025, while monitoring the pole camera from the CMPD office, Officer Evan Seymour observed a white Chrysler reverse halfway into a parking spot in front of the mini-mart and park. Tr. 26. The driver was later identified as Defendant.

Shortly after Defendant parked, a man, later identified as "Stevenson," approached the vehicle on foot with his dog. Defense Exhibit A – Pole Camera Footage ("Pole Cam") (1:50–2:12). Defendant opened the driver's door, engaged in a brief interaction with him, and Stevenson then walked away. *Id.* (2:07–55). Officer Seymour testified that, based on his training and experience,

---

[1] The mini-mart is located at 7020 Lawyers road. Tr. 4.

quick interactions can be consistent with attempts to initiate a drug transaction, and that he therefore began monitoring the vehicle closely. Tr. 9–10.

More than thirty minutes later, Stevenson and his dog returned. Pole Cam (31:50). After briefly entering the mini-mart, Stevenson again approached Defendant's vehicle. *Id.* (31:50–33:25). Defendant, still seated in the driver's seat of the vehicle, reached his arm back toward Stevenson and the two made an exchange. *Id.* (33:20). As the pole camera—controlled by Officer Seymour—zoomed in, Defendant can be seen reaching back into the vehicle before handing Stevenson a small baggie. *Id.* (33:26–27). After stowing the baggie, Stevenson handed Defendant a small wad of cash. *Id.* Believing he had witnessed a hand-to-hand drug transaction, Officer Seymour notified Officers Torres and DelCerro, who were already in the vicinity. Tr. 17.

As Stevenson and his dog retreated to the corner of the mini-mart, Defendant exited his vehicle, entered the mini-mart, and less than thirty seconds later, exited the store and handed a flat, bill-like item to Stevenson. Pole Cam (33:44–34:25). Then, Stevenson and his dog departed on foot while Defendant got back in his vehicle and drove off. *Id.* (34:25–35:01). Officer Seymour rotated the pole camera and observed Defendant pull into a shopping center across the street. Tr. 18. He updated Officers Torres and DelCerro, who arrived at the shopping center in their police vehicle moments later. Pole Cam (35:50). Around this time, Officer Seymour left the CMPD office to locate Stevenson. Tr. 21.

When Defendant drove out of the shopping center, Officers Torres and DelCerro followed him. Pole Cam (38:48–39:37). They activated their body worn cameras ("BWC") and conducted a traffic stop. DelCerro BWC (13:54:57).[2] While Officer Torres approached the passenger side of

---

[2] To create a clear timeline, the Court uses the timestamp in the BWC footage for each officer rather than the relative time of the video that has elapsed.

the car, Officer DelCerro approached the driver's side and instructed Defendant to exit the vehicle. Torres BWC (13:55:24). As Defendant stepped out, Officer DelCerro told him he was being detained. *Id.* (13:55:36–46). Defendant repeatedly asked why he had been stopped. *Id.* (13:55:24–55).

Just before placing Defendant in handcuffs, Officer DelCerro asked Defendant if he had been smoking in the car. *Id.* (13:55:39–40). Defendant replied that he had.[3] *Id.* (13:55:40–41). Officer DelCerro then began searching the vehicle while Officer Torres stayed with Defendant. DelCerro BWC (13:56:03). Officer Torres told Defendant he was going to read him his *Miranda* rights, but before he could, Defendant again asked about the nature of the stop. Torres BWC (13:56:04–24). Officer Torres told him that he had "immediately" smelled a strong odor of marijuana from the vehicle and he observed baggies in the back of the vehicle. *Id.* (13:56:21–29). Defendant asked, "Y'all smelled the odor of marijuana from, from driving behind me?" *Id.* Officer Torres replied, "No, I smelled it right there," and pointed at the front passenger side of the vehicle. *Id.* (13:56:28–29). Officer Torres then read Defendant his *Miranda* rights, confirmed that he understood them, and Defendant agreed to talk with him. *Id.* (13:57:20–46). When asked whether there were firearms in the vehicle, Defendant shook his head and said "no." *Id.* (13:58:21–22).

Approximately three minutes into the stop—at 1:58 p.m.—Officer Seymour radioed Officers Torres and DelCerro to report that he had located Stevenson, who admitted that Defendant had sold him marijuana. Tr. 21–22. Around that same time, Officer DelCerro can be heard responding "Yes, 10-4" into his radio. DelCerro BWC (13:58:34). During the vehicle search, Officer DelCerro opened the top portion of the center console and located a baggie containing what appeared to be marijuana. DelCerro BWC (13:56:27). He found two additional baggies of

---

[3] It is unstated what type of product Defendant was admitting to smoking.

suspected marijuana when he opened the lower compartment of the center console, and another one between the driver's seat and center console. *Id.* (13:56:31; 13:58:00).

As Officer DelCerro began searching the rear of the vehicle, Defendant began looking back repeatedly to see what he was doing. Torres BWC (14:02:22–54). After lifting the rear passenger seat, Officer DelCerro discovered a loaded 9mm pistol. DelCerro BWC (14:02:47–57). Defendant stated, "I know I'm going to jail, man," Torres BWC (14:03:09), followed by, "I know what you found, man." DelCerro BWC (14:04:20–22). Defendant was placed under arrest, and Officer Seymour arrived shortly thereafter to transport Defendant to CMPD for processing. Torres BWC (14:04:36).

On July 15, 2025, Defendant was indicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). *See* Doc. No. 1. He filed a motion to suppress in May 2026, and the Court held a suppression hearing on July 2, 2026. The motion is now ripe for disposition.

### III. DISCUSSION

Defendant contends that the officers' actions violated his Fourth Amendment rights and that the evidence obtained should be suppressed under the exclusionary rule. More specifically, Defendant argues that police officers (1) lacked reasonable suspicion sufficient to conduct the traffic stop and (2) had no probable cause to search the vehicle. *See* Doc. No. 20.

#### 1. Traffic Stop

Defendant first argues that Officers Torres and DelCerro did not have reasonable suspicion to conduct the traffic stop. The Court disagrees.

In the case of a traffic stop, the police officer must be able "to either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances,

that the behavior is likely to be indicative of some more sinister activity than may appear at first glance." *United States v. Williams*, 808 F.3d 238, 246 (4th Cir. 2015) (quoting *United States v. Foster*, 634 F.3d 243, 248 (4th Cir. 2011)). The relevant facts provided by the police officer must "in their totality serve to eliminate a substantial portion of innocent travelers." *Id.* (quoting *United States v. McCoy*, 513 F.3d 405, 413 (4th Cir. 2008)).

In addition, the collective knowledge doctrine applies … "when at least some, but not all, of an investigative team has actual knowledge of facts necessary to a finding of probable cause. The knowledge is imputed from one officer to another such that the officers collectively are assumed to have actual knowledge of the imputed fact." *United States v. Pulley*, 987 F.3d 370, 379 (4th Cir. 2021) (quoting *United States v. Blauvelt*, 638 F.3d 281, 289 (4th Cir. 2011)). The collective knowledge doctrine applies equally to the question of reasonable suspicion. *United States v. McCullers*, 591 F. Supp. 3d 38, 47 (E.D. Va. 2022), *aff'd sub nom. United States v. Brown*, 114 F.4th 253 (4th Cir. 2024) (citing *United States v. McRae*, 336 F. App'x 301, 305 (4th Cir. 2009)).

The Court finds, based on its review of the pole camera and its experience, that Officer Seymour's testimony accurately describes the events of that day. Officer Seymour observed Defendant reverse partway into a parking space in front of a mini-mart in an area known for violent crime and drug activity. Instead of exiting, Defendant remained seated in his vehicle for over thirty minutes. Shortly after Defendant parked, Stevenson and his dog approached the driver's side on foot, engaged in a brief interaction, and then departed. Approximately thirty minutes later, Stevenson returned and again approached Defendant's vehicle. This time, Defendant reached backward out of the vehicle and made an exchange with Stevenson. As the pole camera zoomed in, Defendant can be seen reaching back into his vehicle and then handing Stevenson a small

baggie.[4] After stowing the baggie, Stevenson handed Defendant a small wad of cash. Defendant then exited the vehicle and entered the mini-mart for less than thirty seconds. Upon exiting, he handed Stevenson a flat, bill-shaped item, and then they both left the area.

Relying on *Drakeford v. United States,* 992 F.3d 255, 264 (4th Cir. 2021), Defendant contends that the officers possessed only a "bare suspicion of drug trafficking" and that the observed interactions—brief "exchange[s]" with another individual in a mini-mart parking lot—were no more indicative of criminal activity than the handshakes deemed insufficient in *Drakeford.* According to Defendant, both gestures are "benign and common" and cannot "reasonably be viewed as an exchange of drugs." Doc. No. 20 at 6. Not so. Rather, the facts here and *Drakeford* is readily distinguishable.

*Drakeford* involved two quick handshakes that police interpreted as a drug exchange based solely on the "mannerisms" of the interaction. 992 F.3d at 260. Here, by contrast, Officer Seymour observed four separate exchanges, two of which involved Defendant handing Stevenson a baggie and Stevenson handing Defendant money in return. These were not fleeting gestures readily susceptible to innocent interpretation; instead, they were reciprocal exchanges involving an object consistent with narcotics packaging and an immediate transfer of cash. Taken together, these observations amount to far more than a simple handshake and a generalized suspicion of drug activity.

In addition, Officer Seymour testified that based on these observations, he relayed to Officers Torres and DelCerro his belief that he witnessed a hand-to-hand drug transaction. Under the totality of the circumstances, this specific knowledge—imputed to Officers Torres and

---

[4] Although the contents of the baggie are not clearly visible, the pole cam clearly captures the top of the baggie as it is handed to Stevenson. Pole Cam (33:26–27).

DelCerro under the collective knowledge doctrine—coupled with the officers' general knowledge that the mini-mart and surrounding area is a frequent site of violent crime and drug activity, gave the officers reasonable suspicion to initiate the traffic stop, which occurred only minutes later.[5]

### 2. Vehicle Search

Defendant also argues that the officers lacked probable cause to search his vehicle and that the contraband recovered during the search must therefore be suppressed. In support, Defendant relies on out of circuit authority for the proposition that the odor of marijuana, standing alone, does not establish probable cause to conduct a warrantless vehicle search. *See* Doc. No. 20 at 8. The Government responds that the officers developed probable cause because the strong odor of marijuana emanating from the vehicle provided a sufficient basis to believe it contained contraband. The Court agrees with the Government.

"The automobile exception allows police to search a vehicle if they have probable cause to believe it contains contraband." *United States v. Alston*, 941 F.3d 132, 138 (4th Cir. 2019) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)) (additional citation omitted). "An officer's detection of marijuana creates such probable cause." *Id.* Indeed, as the Fourth Circuit has repeatedly held, the odor alone can provide probable to search a vehicle. *United States v. Carson*, --- F.4th ---, No.25-4200, 2026 WL 1965954, at *5 (4th Cir. July 8, 2026) (Upon detecting marijuana odor from the rear driver's side window, "[i]t is undisputed that [Officer] had reasonable suspicion upon detecting the marijuana odor."); *United States v. Maxwell*, No. 24-4640, 2026 WL 1662167, at *2 (4th Cir. June 9, 2026) ("the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage.") (quoting *United States v. Scheetz*, 293 F.3d 175, 184

---

[5] Based on the exchanges between Defendant and Stevenson, the responding Officers would have had reasonable suspicion to conduct the traffic stop even if Defendant had not been located in an area known for drugs and violence.

9

(4th Cir. 2002)); *see also United States v. Harris,* No. 24-4509, 2025 WL 3296047, at *1 (4th Cir. Nov. 26, 2025) ("marijuana odor emanating from a vehicle is sufficient to justify a law enforcement officer's probable cause to search that vehicle."); *Palmer,* 820 F.3d at 650 ("An officer's detection of marijuana odor is sufficient to establish … probable cause [to search a stopped vehicle]."); *United States v. Brogdon*, No. 25-4157, 2026 WL 1650993, at *1 (4th Cir. June 8, 2026) (same). And, "when police have probable cause, the automobile exception permits 'the search of every part of the vehicle ... that may conceal the object of the search.'" *Id.* (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

Here, Officer DelCerro wrote in his report that he smelled marijuana during the traffic stop, and testified that, as he approached Defendant's vehicle, he "smelled a strong odor of marijuana coming from the vehicle." Doc. No. 20 at 9; Tr. At 56. Similarly, Officer Torres explained to Defendant that when he approached the passenger side of the vehicle, he "immediately" detected a strong odor of marijuana and observed baggies in the rear of the vehicle. Torres BWC (13:56:21–29). Moreover, although the odor alone was sufficient to establish probable cause to search the vehicle, the officers also possessed additional information from a fellow officer that Defendant had just engaged in a suspected hand-to-hand drug transaction from the vehicle.[6] Taken separately

---

[6] Although the Government does not advance this argument in its briefing, the Court concludes that Officers Torres and DelCerro had already developed probable cause to search Defendant's vehicle even before detecting the odor of marijuana. As the Court explained during the hearing, probable cause to search the vehicle under the automobile exception arose when Officer Seymour relayed his observation of a suspected hand-to-hand drug transaction by Defendant from his vehicle, and the officers stopped Defendant's vehicle within minutes of that report. *See United States v. Johnson*, 599 F.3d 339, 340 (4th Cir. 2010) (officers had probable cause to search a vehicle under the automobile exception where the defendant repeatedly approached a nearby vehicle before engaging in a series of suspected hand-to-hand drug transactions).

or together, these facts provided ample probable cause, and the search was proper under the automobile exception to the warrant requirement.

Further, even if the officers lacked probable cause at the moment of the initial stop, the suspected marijuana and firearm would have been inevitably discovered. Under the "inevitable discovery" doctrine, "the government [can] use information obtained from an otherwise unreasonable search if it can establish … that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'" *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017); *see also Nix v. Williams*, 467 U.S. 431, 444 (1984); *Alston*, 941 F.3d at 136 (contraband found in a suspect's car after an unlawfully obtained confession not excluded because the contraband would have been discovered under the automobile exception to a search warrant).

For the doctrine to apply, the government "must prove by a preponderance of the evidence: first, that police legally *could* have uncovered the evidence; and second, that police *would* have done so." *Alston*, 941 F.3d at 138 (emphasis in original). Indeed, "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." *Nix*, 467 U.S. at 447.

"To rely on the inevitable discovery doctrine, the government must prove that police had 'lawful means' to discover the illegally obtained evidence." *Alston*, 941 F.3d at 138 (quoting *Nix*, 467 U.S. at 444). "'Lawful means' includes 'an inevitable search falling within an exception to the warrant requirement' or a search pursuant to a valid warrant." *Id.* (quoting *Bullette,* 854 F.3d at 265). Two such exceptions to the warrant requirement are the automobile exception and the search incident to arrest.

Approximately three minutes into the traffic stop, Officers Torres and DelCerro learned from Officer Seymour that he had located Stevenson, who admitted that Defendant had just sold him marijuana. At that point, the officers had probable cause to believe that contraband would be found in Defendant's vehicle. They were therefore permitted to search the vehicle under the automobile exception, or, if they arrested him, under the search incident to arrest exception. Because the officers did in fact search the vehicle, the Government has shown by a preponderance of the evidence that the suspected marijuana and the firearm both could and would have been inevitably discovered. Accordingly, for all these reasons, Defendant's Motion to Suppress will be **DENIED**.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Defendant's Motion to Suppress (Doc. No. 20) is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.
Signed: July 15, 2026

Kenneth D. Bell
United States District Judge